# Illinois Official Reports

## Appellate Court

*In re Kendale H.*, 2013 IL App (1st) 130421

| | |
|---|---|
| Appellate Court Caption | *In re* KENDALE H., a Minor (The People of the State of Illinois, Petitioner-Appellant, v. Kendale H., Respondent-Appellee). |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-0421 |
| Filed | December 27, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an interlocutory appeal from the grant of respondent's motion to suppress in proceedings on a petition for adjudication of wardship arising from the discovery of a shotgun shell in respondent's clothing during a search thereof after he was shot by the police while he was running from their approaching car, the trial court's erroneous ruling that a stop occurred while respondent was running away was reversed and the cause was remanded for a suppression hearing at which respondent may introduce evidence that he was shot and the State may respond to that evidence with an explanation of the actions of the police, and based on all of the circumstances surrounding the incident, the trial court should be able to resolve the case in a spirit of humane concern for all involved. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 11-JD-4911; the Hon. Carl Walker, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

| | |
|---|---|
| Counsel on Appeal | Anita M. Alvarez, State's Attorney, of Chicago (Alan J. Spellberg, Amy M. Watroba, and Haley Peck, Assistant State's Attorneys, of counsel), for the People. |
| | Eileen M. O'Connor, of O'Connor Law Group, LLC, of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE GORDON delivered the judgment of the court, with opinion. Justice McBride specially concurred, with opinion, joined by Justice Palmer. |

## OPINION

¶ 1    The only issue on this appeal is whether or not a seizure occurred.

¶ 2    The trial court held that respondent Kendale H., a minor, was seized during the police's vehicular chase of him, while he was running on foot in a vacant lot. On appeal, respondent argues that a seizure occurred when the police subsequently shot him in the abdomen. On appeal, the State does not argue that the shooting was justified, but argues only that no seizure occurred during the chase.

¶ 3    For the following reasons, we reverse the trial court's ruling that a seizure occurred during the chase and we remand for a suppression hearing at which the minor may introduce evidence that, at the end of the chase, he was shot by the police. Although there is no question that the shooting was a seizure, our remand provides the State with an opportunity to respond to this evidence.

¶ 4    In the case at bar, the State sought an adjudication of wardship on the ground that the minor respondent possessed one shotgun shell, which the police discovered during a search of respondent's clothing after the police shot him. The possession was illegal since respondent lacked a Firearm Owner Identification (FOID) card. Respondent moved to suppress the shell on the ground that it was the product of an unreasonable seizure in violation of the fourth amendment. After a hearing at which the sole witness was one of the arresting officers, the trial court granted the motion to suppress. The State then filed a notice of substantial impairment, and this appeal followed.

¶ 5                                    BACKGROUND

¶ 6    On November 16, 2011, the State filed a petition for adjudication of wardship that alleged five counts, including two counts of aggravated assault, one count of assault, one count of resisting a police officer, and one count of possessing firearm ammunition without a FOID

- 2 -

card. On November 21, 2011, the trial court found that there was no probable cause to support any of the counts but the firearm ammunition count, which is a Class A misdemeanor carrying a maximum sentence of less than one year and a fine not to exceed $2,500. 430 ILCS 65/2(a)(2), 14(e) (West 2012); 730 ILCS 5/5-4.5-55(a), (e) (West 2012).

¶ 7                                    I. The Probable Cause Hearing

¶ 8      At the arraignment on November 21, 2011, respondent stated that he was 17 years old, that he was currently a senior in high school, that he was graduating this year, that he was going to college in Memphis, Tennessee, after graduation, and that he resided with his mother and siblings. After the arraignment, the trial court proceeded directly to the probable cause hearing. On behalf of the State, the prosecutor stated:

> "If called to testify under oath, Officer Mayes, spelled M-A-Y-E-S, star number 1-3-1-7-2, would testify under oath [that on] October 1st, 2011, [at] approximately 11:09 p.m., he was in or around the address of 6237 South Eberhart Avenue in Chicago, Cook County, Illinois 60637.
>
> He would testify that on that date and approximate time, he was the passenger in a marked police car vehicle [*sic*] while on duty as a police officer. He would testify that his partner was driving the vehicle. He would testify that on that date and approximate time, he was driving down 63rd Street when he observed this minor along with two other individuals walking on [*sic*] that address.
>
> He would testify that him–he and his partner decided to conduct a field interview on these three individuals. He would testify that as he drove towards the three individuals, these three individuals, including this minor, had looked in the officer's direction and separated and began to run.
>
> He would testify that this–that he then–he and his partner, while in their car, then began to follow this minor, who fled northeast from 63rd Street and Vernon [Avenue] towards Eberhart [Avenue], and he testified–he would testify that this minor with–who was cut off from his northbound flight due to the stopping of the car in front of the minor, then reversed his direction and began to run southbound on Eberhart [Avenue].
>
> He would testify that at this time, he exited his vehicle, identified himself as a Chicago Police Officer, and ordered the minor to stop. He would testify [that] this minor then continued to run southbound and then turned eastbound into the north alley of 63rd Street. He would testify that he had continued to chase this minor on foot while ordering him to stop running.
>
> He would testify further that[,] during the course of this chase, he observed this minor continually reaching into his waistband as he was running from the officer. He would testify that he believed that this minor was attempting to reach for an object in his waistband.
>
> He would testify further that he ordered this minor to stop running, but this minor continued into the alley of Eberhart [Avenue] and ran northbound. He would testify that he followed this minor into that alley.

He would testify further that at 6239 Eberhart [Avenue], this minor turned towards him while reaching–stopped fleeing, turned towards him and reached into his waistband. He would testify that this minor then turned around and continued to flee. He would testify further that he then observed this minor jump over a chain link fence.

He would testify that he then ran up to that fence, and while he was before the fence and this minor was past the fence, this minor then stopped and reached into his waist and began to withdraw his hands.

This officer would testify that fearing that this minor was about to pull out a gun, he pulled out his own gun and then in defense fired one time, striking this minor in the abdomen.

He would testify that this minor then fell to the ground. An ambulance was called, and then this minor was placed under arrest."

The prosecutor then stated: "Based on the testimony of the police officer, then I contend he did have probable cause to arrest this minor for all of the charges that were charged in this petition."

¶ 9 The trial court then observed that it had heard nothing concerning the firearm ammunition allegedly found on respondent, and the prosecutor asked to reopen his proffer and the trial court granted the request. The prosecutor then stated:

"Officer Mayes would testify further that upon placing this minor under arrest in a custodial search that he found one shotgun shell in this minor's shirt pocket."

The trial court then made a finding of no probable cause as to all the counts in the petition, except for the ammunition count as to which the court did find probable cause. The trial court observed that "there should be a finding of no probable cause on that [ammunition count], too, and you never said anything about that. Not all judges allow you to reopen your proffer ***."

¶ 10 The State then informed the court that the minor had no prior criminal history, and the case was continued. On October 12, 2012, at a status conference, respondent informed the court that he had graduated high school and was starting college in January 2013, and his counsel informed the court that respondent had delayed his acceptance for a semester due to this matter.

¶ 11 II. The Suppression Hearing

¶ 12 The defense filed two pretrial motions. The first motion, filed on August 2, 2012, alleged that respondent had picked up the shotgun shell by the subway train tracks on his way home and that the statute, which criminalized possession of firearm ammunition without a FOID card, was unconstitutional because it criminalized potentially innocent conduct. Attached to the motion was a trauma history report from Stroger Hospital stating that respondent had arrived at the hospital at 11 p.m. on October 1, 2011, that he had been shot once in the abdomen by a police officer and that the bullet had exited under his left arm. This motion remains pending. On October 23, 2012, respondent filed a motion to suppress the ammunition on the ground that it was the product of an unreasonable search and seizure.

¶ 13    On November 2, 2012, the trial court held a hearing on respondent's suppression motion at which one witness was called. Officer Jerome Starks testified that he was 39 years old and had been with the Chicago police department since 2006. He was working a "beat patrol" on October 1, 2011, with his partner Officer Alfred Mayes on a night shift that began at 9 p.m. and lasted until 6 a.m. They were patrolling the area around 63rd Street and South Eberhart Avenue in Chicago in a marked police vehicle with Officer Starks driving. At 11 p.m., he observed three males walking eastbound on 63rd Street near King Drive. At that time, he was not looking for any particular suspects. After observing the three males, he made a right turn onto 63rd Street from King Drive, traveling eastbound on 63rd Street. When he passed the three males, he stopped the vehicle. At that point, he was on 63rd Street, near Vernon Avenue, facing eastbound, and he continued to observe the three males. After the police vehicle stopped, the three males separated, with two of them walking northbound on Vernon Avenue and the third one walking eastbound on 63rd Street. The third one, who was respondent,[1] then walked through a vacant lot located on the east side of 63rd Street between Vernon and Eberhart Avenues. After respondent entered the vacant lot on foot, Officer Starks drove his vehicle into the lot.

¶ 14    Officer Starks testified that his intent in driving into the lot was "[t]o conduct a field interview." He explained that, by "a field interview," he meant "to stop the individual to maybe get a name, get some information, to see what he's doing, or where he's going." However, he testified that he had no reason at that time to believe that respondent was involved in any criminal activity, and his suspicions about respondent never changed. He also did not have a warrant to arrest or search respondent. The officer testified that this was "a high crime area," and he observed "the three individuals walking, looking kind of suspicious only because the way they were looking at us as well." When asked "what about [respondent] appeared suspicious to you," he answered: "Just the hands in the pocket–in his pockets and the way he was looking at us to see what we were doing."

¶ 15    Officer Starks testified that, after driving his police vehicle into the vacant lot, he observed respondent walking across the lot and the officer accelerated his vehicle. When the police vehicle accelerated, respondent began to run. When respondent began to run, Officer Starks stopped the vehicle and Officer Mayes exited the passenger side and yelled at respondent.

¶ 16    Officer Starks testified that the curfew age for a minor under the age of 17 is 9:30 p.m. However, for someone 17 years or older, there is no curfew. When he first observed respondent, it was before 11 p.m.

---

[1]Although defense counsel did not specifically ask Officer Starks to identify respondent in court, defense counsel phrased her questions in terms of "the subject" or "Kendale [last name]" and she did ask the officer to identify who he meant by "the subject" and he replied: "The subject I believe to know now as Mr. [last name]." In addition, defense counsel used respondent's full name, asking at one point whether the officer had a warrant to arrest or search "Kendale [last name]." Also, both the prosecutor and the defense counsel subsequently made closing arguments concerning respondent. Thus, there was no confusion at the suppression hearing about whom Officer Starks was testifying.

¶ 17    After the defense rested, the State moved for a directed finding on the ground that the defense failed to have the officer identify the respondent in open court and failed to elicit any information concerning a detention of respondent by the officers. The testimony about the event at the suppression hearing ended with respondent running across a vacant lot. The trial court denied the State's motion for a directed finding, and the State rested and the parties proceeded to closing argument. During closing argument, defense counsel conceded that this was a high-crime neighborhood and argued that "the chase was a seizure," and the prosecutor conceded that the officer testified that he "saw a minor, who he believes [*sic*] his name is Kendale [last name]."

¶ 18    After hearing arguments from both sides, the trial court observed that this incident "occurred in October in Chicago, so it's not unusual that individuals walking might have their hands in their pockets," and "that simply being in a high crime neighborhood alone is not enough to justify an investigatory stop, although it may be a relevant factor." The trial court then concluded:

> "The officer has not provided any specific articulable facts, which taken together would justify an intrusion in this case. The Court therefore finds the bullets, which were the basis for the arrest, are hereby suppressed as a product of an unconstitutional seizure."

¶ 19                    III. The State's Motion to Reconsider

¶ 20    On November 30, 2012, the State filed a motion to reconsider, arguing: "There is no testimony that a seizure occurred in the record. No one testified that the minor was detained in any way." In his response, respondent argued: "This argument is completely nonsensical. The State concedes that Officer Mayes detained the Minor by shooting him." Attached as "Exhibit A" to respondent's response were: the transcript of the November 2, 2012, suppression hearing; the trauma history report of Stroger Hospital admitting respondent at 11 p.m. on October 1, 2011; and the arraignment order.

¶ 21    On December 20, 2012, after hearing argument from both sides, the trial court stated that, in response to the State's motion to reconsider, it had "decided to reconsider the matter" and that it now found the following facts:

> "And pursuant to the Court's reconsidering of the matter, the Court finds the facts in this matter to be that the officers attempted to stop the minor respondent. The officers did not have a warrant at the time that they attempted to stop the minor respondent.
>
> The Court finds that the minor respondent was doing absolutely nothing unusual. He was simply walking down the street when the officers decided that they wanted to stop him to conduct a field interview.
>
> The officer was clear that the minor respondent was not engaged in any criminal activity at the time. The minor had not done anything unusual. He was originally walking with two friends. They walked in one direction. The minor walked in another.

The Court finds–This Court finds that this was a warrantless stop. The Court finds that the stop was not justified because the minor was doing nothing unusual.

Although an officer may conduct an investigatory stop when the officer reasonably infers from circumstances that the person is committing or is about to commit or has committed a criminal offense, in this case the officer has no–had no reason to even conduct an investigatory stop.

[The] [c]ourt finds that the motion to quash should have been granted. The Court continues to stand by that ruling, and the motion to quash the arrest is granted. The Court finds that even if the–Well, I don't get into that.

The subsequent facts led to the minor in this case subsequently being shot by the police officers; but those facts, the Court won't get into."

¶ 22                                    IV. The State's Notice of Appeal

¶ 23    On January 18, 2013, the State filed a notice of appeal and a certificate of substantial impairment. The certificate stated that "the order granting minor-respondent's motion to suppress evidence and *** the order denying the People's motion to reconsider in the above-captioned case substantially impairs the People's ability to prosecute said case."

¶ 24    On January 22, 2013, the parties appeared before the trial court for a previously scheduled status date and the State informed the trial court that it had filed a notice of appeal. The defense counsel asked about her previously filed motion challenging constitutionality, and the trial court explained that it had no authority to act once the notice of appeal was filed.

¶ 25                                              ANALYSIS

¶ 26    In the case at bar, the State sought an adjudication of wardship on the ground that the minor respondent possessed one shotgun shell, which the police discovered during a search of respondent's clothing after the police shot him. Respondent moved to suppress the shell on the ground that it was the product of an unreasonable seizure in violation of the fourth amendment. After a suppression hearing, the trial court granted the motion, and the State filed a notice of substantial impairment and this appeal followed.

¶ 27                                         I. Standard of Review

¶ 28    A review of a trial court's ruling on a motion to suppress evidence presents mixed questions of fact and law. *People v. Lee*, 214 Ill. 2d 476, 483 (2005). When reviewing a trial court's ruling on a motion to suppress evidence, we accord great deference to the trial court's factual findings. *People v. Close*, 238 Ill. 2d 497, 504 (2010). We will reverse a trial court's findings only if they are against the manifest weight of the evidence. *People v. Bunch*, 207 Ill. 2d 7, 13 (2003). "A judgment is against the manifest weight of the evidence only when an opposite conclusion is apparent or when findings appear to be unreasonable, arbitrary, or not based on evidence." *Bazydlo v. Volant*, 164 Ill. 2d 207, 215 (1995).

¶ 29    However, we review *de novo* the trial court's ultimate legal ruling as to whether suppression was warranted. *People v. Pitman*, 211 Ill. 2d 502, 512 (2004); *In re Mario T.*, 376

Ill. App. 3d 468, 472 (2007) ("Our focus *** is on the legal question of the justification of the stop and frisk so as to warrant the denial of the *** motion to suppress."). *De novo* consideration means we perform the same analysis that a trial judge would perform. *Khan v. BDO Seidman, LLP*, 408 Ill. App. 3d 564, 578 (2011). Since the State does not present any arguments on appeal that the seizure was reasonable, the ultimate legal question in this case is whether a seizure occurred for the purposes of the fourth amendment. This is a question we consider *de novo*. *Mario T.*, 376 Ill. App. 3d at 472-73 ("whether the motion should have been granted necessarily turns on a reviewing court's 'own assessment of the facts in relation to the issues presented and may draw its own conclusions when deciding what relief should be granted' " (quoting *Pitman*, 211 Ill. 2d at 512)).

¶ 30    When a criminal defendant files a motion to suppress evidence, claiming that there was an illegal search or seizure, he or she has the burden of demonstrating the illegal search or seizure. *People v. Buss*, 187 Ill. 2d 144, 204 (1999). In deciding the motion, the normal rules of evidence do not apply and the trial court may consider hearsay evidence that would not be admissible at trial. *People v. Patterson*, 192 Ill. 2d 93, 111-12 (2000); Ill. R. Evid. 104(a) (eff. Jan. 1, 2011) ("In making its determination [about the admissibility of evidence], the court is not bound by the rules of evidence except those with respect to privileges."). See also *United States v. Matlock*, 415 U.S. 164, 172-73 (1974) ("the rules of evidence normally applicable in criminal trials do not operate with full force at [suppression] hearings before the judge to determine the admissibility of evidence").

¶ 31    As the State correctly observes in its brief, "[i]t is a fundamental principle of appellate law that when an appeal is taken from a lower court judgment, the question before the court of review is the correctness of the result, not the correctness of the reasoning on which the result was reached." See *People v. Johnson*, 208 Ill. 2d 118, 128 (2003). Thus, an appellate court may affirm a lower court's judgment on any ground supported by the record. *Johnson*, 208 Ill. 2d at 129-30.

¶ 32                                II. The Juvenile System

¶ 33    A petition for wardship is not a criminal proceeding; it is not even an adversarial proceeding. *In re C.J.*, 328 Ill. App. 3d 103, 111, 114 (2002) ("Our supreme court clearly denominated juvenile proceedings to be 'not criminal' and 'nonadversarial' " (citing *In re W.C.*, 167 Ill. 2d 307, 320, 326 (1995))). See also 705 ILCS 405/1-5(1) (West 2012) ("proceedings under this Act are not intended to be adversary in character"). The lack of adversarialness in the case at bar was emphasized during the probable cause hearing when the trial court, instead of dismissing the ammunition count, pointed out to the State that it had failed to introduce any evidence on that count and allowed the State to reopen its proffer. "Our state supreme court has been careful to point out that neither general criminal practice rules nor provisions of the criminal code or criminal procedural code have been incorporated into the juvenile system." *In re C.J.*, 328 Ill. App. 3d at 111 (citing *In re W.C.*, 167 Ill. 2d 307, 322 (1995), and *People v. Woodruff*, 88 Ill. 2d 10, 15-16 (1981)). While the Act bestows upon a minor "all the procedural rights of adults in criminal proceedings," nowhere does it require of them all the procedural obligations. 705 ILCS 405/5-101(3) (West 2012). Instead, the Act must

be administered in a "spirit of humane concern." 705 ILCS 405/1-2(2) (West 2012) ("This Act shall be administered in a spirit of humane concern.").

¶ 34                                    III. The Seizure

¶ 35    The timing of the seizure is a critical issue in this case. On appeal, the defense argues that respondent was seized at the moment when the officer shot him. The State argues that respondent was not seized at the moment when he ran from the officers; however, it offers no arguments on appeal concerning whether respondent was seized when he was shot. As stated above, we remand so that the State may introduce, at a suppression hearing, evidence what led to the shooting, so that the State has the opportunity to address the issue of seizure.

¶ 36    While it is black-letter law that respondent was not seized while he was still running away (*California v. Hodari D.*, 499 U.S. 621, 626 (1991)), there is also no question that he was at least seized when the shot to his abdomen caused him to fall to the ground. *People v. Luedemann*, 222 Ill. 2d 530, 550 (2006) (seized " ' "by means of physical force" ' " (quoting *Florida v. Bostick*, 501 U.S. 429, 434 (1991), quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968))).

¶ 37    First, respondent was not seized while he was still running away from the officers. For purposes of the fourth amendment, an individual is "seized" when an officer " ' "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." ' " *People v. Luedemann*, 222 Ill. 2d 530, 550 (2006) (quoting *Bostick*, 501 U.S. at 434, quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). The United States Supreme Court explained:

> "The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful. ('She seized the purse-snatcher, but he broke out of her grasp.') It does not remotely apply, however, to the prospect of a policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee. That is no seizure." *Hodari D.*, 499 U.S. at 626.

As the *Hodari D.* Court explained, the word "seizure" does not remotely apply to the prospect of a policeman yelling "Stop!" at a fleeing form. *Hodari D.*, 499 U.S. at 626. Thus, the trial court erred when it held that respondent was seized during the officers' vehicular chase of respondent, as he continued to run on foot.

¶ 38    Second, respondent was certainly seized when he was shot in the abdomen and fell to the ground. Further evidence could show that he was seized earlier, but we do not know of any additional facts at this point in time to make that determination. " '[T]he appropriate inquiry [about whether a seizure occurred] is whether a reasonable person would feel free to decline the officers' requests or otherwise terminate the encounter.' " *Luedemann*, 222 Ill. 2d at 550 (quoting *Florida v. Bostick*, 501 U.S. 429, 436 (1991)). The inquiry "presupposes a reasonable *innocent* person." (Emphasis in original.) *Luedemann*, 222 Ill. 2d at 551 (citing *Bostick*, 501 U.S. at 438). Illinois courts will consider the totality of the circumstances in determining whether or not a seizure occurred. *Luedemann*, 222 Ill. 2d 530. The circumstances Illinois courts will consider when deciding if a seizure occurred include the *Mendenhall* factors, which were set forth in a United States Supreme Court case of the same name. *People v. Cosby*, 231

Ill. 2d 262, 274 (2008) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980)). In *Mendenhall*, the United States Supreme Court held:

> " '[A] person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person did not attempt to leave, would be [1] the threatening presence of several officers, [2] the display of a weapon by an officer, [3] some physical touching of the person of the citizen, or [4] the use of language or tone of voice indicating that compliance with the officer's request might be compelled.' " *Cosby*, 231 Ill. 2d at 274 (quoting *Mendenhall*, 446 U.S. at 554).

¶ 39   Respondent was unquestionably seized " ' "by means of physical force" ' " when the shot to his abdomen caused him to fall to the ground. *People v. Luedemann*, 222 Ill. 2d 530, 550 (2006) (quoting *Bostick*, 501 U.S. at 434, quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)). Once respondent was lying incapacitated on the ground and in need of immediate medical care, there was no way for him to " 'terminate the encounter' " with the police. *Luedemann*, 222 Ill. 2d at 550 (quoting *Florida v. Bostick*, 501 U.S. 429, 436 (1991)).

¶ 40   Every single one of the *Mendenhall* factors shows that a seizure occurred. First, the officer's use of a weapon made their presence more than threatening; and second, the officer displayed and used a weapon. Third, the shooting constituted a physical touching; and fourth, it indicated that compliance was required. *Cosby*, 231 Ill. 2d at 274 (quoting *Mendenhall*, 446 U.S. at 554). Thus, under fourth amendment precedent, respondent was seized when he was shot, although he was not previously seized while he was still in flight.

¶ 41   Since we are remanding for a suppression hearing and we do not want to cause further delay by necessitating another appeal, we provide some guidance here. In the case at bar, the officer testified both about defendant's flight and his presence in a high-crime area. In *Illinois v. Wardlow*, 528 U.S. 119, 124-25 (2000), the United States Supreme Court held that flight upon seeing police officers, plus presence in a high-crime neighborhood, provided the reasonable suspicion needed to justify a *Terry* stop. However, *Wardlow* differs from the facts at bar in that the *Wardlow* defendant ran when he first noticed the police. *Wardlow*, 528 U.S. at 121-22 (defendant was standing next to a building, when he looked toward the four police vehicles converging on the area and took flight). In other words, the *Wardlow* defendant singled himself out for suspicion by running. By contrast, in the case at bar, the police singled defendant out before he ever ran. Defendant ran only after the police had already begun pursuing him. In addition, in *Wardlow*, the police converged on a particular area known for narcotics trafficking where they expected to find a "crowd of people," which included a large number of "drug customers" and "lookouts." *Wardlow*, 528 U.S. at 121, 124. Since the fourth amendment embraces a nondiscriminatory application, it must be that the words " 'high crime area' " as used in *Wardlow* mean something more specific and distinct than simply a low-income or minority neighborhood. *Wardlow*, 528 U.S. at 124 (quoting *Adams v. Williams*, 407 U.S. 143, 144 (1972)).

¶ 42   The State does not dispute on appeal that the shooting occurred and the trial court found as a factual matter that the chase "led to the minor in this case subsequently being shot by the

- 10 -

police officers." In addition, the State sought the minor's detention based on a proffer that included the shooting; and it cannot now argue that its own proffer lacks credibility. *Cf.* 705 ILCS 405/5-150(1)(a) (West 2012) (evidence admitted in any proceeding under the Act is admissible in any subsequent proceeding under the Act against the same minor). The trial court observed that it is cold in Chicago at night in October when this incident occurred and, as a result, there is nothing suspicious about walking down the street with one's hands in one's pockets. No one could dispute that conclusion.

¶ 43    However, we acknowledge that respondent's failure to introduce evidence of the shooting at the suppression hearing meant that the State then failed to address it as well. The trial court, in turn, did not address the shooting in its ruling and instead made an erroneous ruling that defendant was seized while he was still running away on foot.

¶ 44    Thus, on this interlocutory appeal, we reverse the trial court's erroneous ruling that a seizure occurred during an ongoing chase and remand for a suppression hearing at which respondent may introduce evidence of the shooting, so that the State then has the opportunity to respond to the evidence.

¶ 45    While remanding, we observe that all this case concerns is a minor with a shell in his pocket, since the State does not dispute the propriety of the trial court's dismissal of all the other charges. On remand, we assume that all parties will conduct themselves in "a spirit of humane concern" required by the Act. 705 ILCS 405/1-2(2) (West 2012) ("This Act shall be administered in a spirit of humane concern ***."). We direct the trial court to schedule this hearing on an expedited basis, since this child already suffered during the shooting and has the potential of college ahead of him. Nothing in this opinion prevents the parties and the court from coming to a resolution of this case that is advantageous to all concerned.

¶ 46                                        CONCLUSION

¶ 47    In sum, on this interlocutory appeal by the State, we reverse the trial court's erroneous ruling that a stop occurred during the police's vehicular chase of a minor who was running away on foot. We remand for a suppression hearing at which respondent may introduce evidence that he was shot in the abdomen by police officers and at which the State may then respond to this evidence.

¶ 48    Reversed and remanded with directions.

¶ 49    JUSTICE McBRIDE, specially concurring.

¶ 50    I concur that we should reverse the trial court's decision to grant respondent's motion to suppress and that we should remand for further proceedings. Since there was insufficient evidence presented at the motion to suppress to establish that a seizure occurred, the trial court's order granting the motion to suppress was erroneous.

¶ 51    Although I would agree that a shooting can amount to a seizure, those facts were never developed in the juvenile court and, until they are developed, we have no reason to discuss

what should occur upon remand. I also agree that both sides should have an opportunity to present evidence to establish whether there was probable cause to arrest respondent.

¶ 52 In light of the above, I concur only in the decision to the extent I have stated, and not in the analysis used by the lead author.

¶ 53 JUSTICE PALMER joins in this special concurrence.