**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 230665-U

Order filed April 14, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| JANELLE GRAY, Independent Administrator of the Estate of Catherine Gray, | ) ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-23-0665 Circuit No. 21-L-533 |
| HAMPSHIRE HOLDINGS, LLC; PEOPLE LINK, LLC; and HOME DEPOT U.S.A, INC., | ) ) ) | |
| Defendants | ) ) | |
| (Robert A. Langendorf, P.C., | ) ) | Honorable Angelo J. Kappas, |
| Appellant). | ) | Judge, Presiding. |

_____

JUSTICE HETTEL delivered the judgment of the court.
Justices Holdridge and Anderson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*: The circuit court's award of $1,015 in attorney fees to the law office of a discharged attorney, based on the theory of *quantum meruit*, was not against the manifest weight of the evidence.

¶ 2　　　On August 14, 2023, plaintiff Janelle Gray, as independent administrator of the estate of Catherine Gray, filed a motion to adjudicate the attorney lien of the law office of Robert A. Langendorf, P.C. (Langendorf P.C.). Following an evidentiary hearing on the motion, the circuit court of Du Page County granted plaintiff's motion to adjudicate the lien and awarded Langendorf P.C. $1,015 in attorney fees. Attorney Robert A. Langendorf of Langendorf P.C. appeals, and for the following reasons, we affirm.

¶ 3　　　　　　　　　　　　　　I. BACKGROUND

¶ 4　　　On June 28, 2019, Catherine was struck by a flower cart at a Home Depot U.S.A., Inc. (Home Depot), store located in Downers Grove, Illinois. The flower cart contained the flowers of Hampshire Holdings, LLC (Hampshire Holdings), and was pushed by an employee of PeopleLink, LLC (PeopleLink), a temporary employment agency. Three days following the incident, Catherine retained Langendorf P.C. to represent her in a personal injury action against Home Depot, Hampshire Holdings, and PeopleLink (defendants).

¶ 5　　　On August 6, 2019, Catherine discharged Langendorf P.C. and retained the law firm of Taxman, Pollock, Murray & Beckerman, LLC (TPMB) pursuant to a contingency fee agreement. Catherine subsequently died due to reasons unrelated to her June 28, 2019, injury. Her daughter, plaintiff, was named as administrator of her estate and, on May 14, 2021, filed a survival action to recover damages in relation to the June 28, 2019, incident. TPMB continued to represent the estate throughout the proceedings. On November 29, 2022, the circuit court entered settlement in the amount of $150,000 in favor of plaintiff and accompanying attorney fees in the amount of $50,000.

¶ 6　　　Following settlement, James Lynch, a partner at TPMB, emailed Langendorf and asked if his firm was pursuing an attorney lien based on *quantum merit* and requested that, if not, Langendorf P.C. execute a release. Langendorf refused to sign the release and asserted a lien for

2

services provided prior to his discharge. Subsequently, plaintiff filed a motion to adjudicate the lien, asserting that TPMB was unable to amicably resolve the issue and requesting that the court adjudicate the lien. Langendorf did not file a written response.

¶ 7  Attached to plaintiff's reply brief in support of her motion to adjudicate the lien was an affidavit by attorney Harvey Paulsen, who represented the settling insurance carriers, Sentry Insurance/Florist Mutual Insurance Company (Sentry). Paulsen averred that the only verbal communications between Langendorf P.C. and Sentry occurred on August 12, 2019, and December 2, 2019. On August 12, a representative of Langendorf P.C. called Sentry and stated that the law firm was representing Catherine in this case, that an attorney lien would be sent, and that the law firm was unsure of Catherine's injuries. On December 2, a representative of Langendorf P.C. again called Sentry and informed Sentry's insurance adjuster that Catherine "may be representing herself in this matter" and that Sentry was not permitted to communicate with her directly.

¶ 8  On October 17, 2023, an evidentiary hearing commenced on the motion to adjudicate the lien. At the hearing, Langendorf testified that he had been a licensed attorney since 1980, that he had practiced in the circuit courts of Du Page and Cook Counties "for a number of years," and that he "[had] done appellate work." Langendorf also testified that he was an arbitrator and had "done many arbitrations with *** the chief judge of the Du Page court," for which he regularly charged $500 per hour. He stated that he had "million dollar settlements" in Du Page County.

¶ 9  Regarding Langendorf P.C.'s representation of Catherine, Langendorf testified that he had "signed up [the] case" and met three separate times with Catherine, who signed a contingency fee agreement and insisted that Langendorf "handle everything personally." Langendorf stated that he had acquiesced and performed the work on Catherine's case himself. He explained that, as part of his work, he had spent "at least three hours" talking with Catherine over the phone and four hours

3

meeting with her to "[go] over everything." He had also faxed information; preserved the videotape of the June 28, 2019, incident; spoke to multiple insurance adjusters; and investigated related to the fact that "she was knocked over by a floral tray in a Home Depot." Langendorf stated that he also spent a "significant amount of time" coordinating the dates and times of Catherine's medical appointments, which included calling her care providers and changing her appointments, and that he spent "particular time" finding the proper defendants and "getting ahold" of defendants' adjusters to discuss and try to convince them to preserve the video of the June 28, 2019, incident.

¶ 10 As to the exact amount of time that Langendorf spent on performing his work for Catherine, he testified that he "did not keep [his] specifically quarter hours or point half hours of each time *** as [he was] not required to." He explained that he "spent a lot of time in this case and [that] the best [he could do was] estimate it" and that he "[didn't] want to [say that he knew] the exact time because [that wasn't] what [he did] in a personal injury case." Langendorf expressed that, although he couldn't "give *** the exact amount of time that [he] spent on this case," he thought that what he had "given" was "probably on the low side of fair." Langendorf testified that, based on his experience, he believed that he was entitled to $500 per hour for the work he had completed for Catherine. He noted that $500 per hour was the same rate at which he was compensated for his work as an arbitrator, and that he believed that the rate was "fair."

¶ 11 At the conclusion of the evidentiary hearing, the circuit court found that Langendorf was entitled to recover attorney fees for his work in representing Catherine at the hourly rate for comparable work in Du Page County, which was $350 per hour, and that Langendorf had rendered 2.9 hours in reasonable services. The court granted plaintiff's motion to adjudicate the lien and awarded Langendorf P.C. $1,015 in attorney fees. Langendorf P.C. now appeals.

¶ 12 II. ANALYSIS

4

¶ 13    Under Illinois law, a discharged attorney engaged on a contingency fee basis is entitled to recover a reasonable fee for the services that he or she provided prior to being discharged, based on the theory of *quantum meruit*. *Will v. Northwestern University*, 378 Ill. App. 3d 280, 303-04 (2007). "*Quantum meruit*" literally means "as much as he deserves" and is an equitable remedy that, as its name suggests, allows the circuit court to award an attorney "as much as he deserves" for representing a client. *Seiden Law Group, P.C. v. Segal*, 2021 IL App (1st) 200877, ¶ 29; *Jameson Real Estate, LLC v. Ahmed*, 2018 IL App (1st) 171534, ¶ 61.

¶ 14    The burden of proof is on the attorney to demonstrate the reasonable value of his or her services. *In re Estate of Callahan*, 144 Ill. 2d 32, 43 (1991). In determining the reasonable value of an attorney's services, the circuit court must consider all relevant factors such as " 'the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the client.' " *Forest Preserve District of Cook County v. Continental Community Bank Trust & Co.*, 2017 IL App (1st) 170680, ¶ 50 (quoting *Kannewurf v. Johns*, 260 Ill. App. 3d 66, 74 (1994)). In determining the reasonableness of attorney fees after a bench trial, the sole question on review is whether the circuit court's judgment regarding attorney fees and costs was against the manifest weight of the evidence. *Wildman, Harrold, Allen & Dixon v. Gaylord*, 317 Ill. App. 3d 590, 598 (2000).

¶ 15    Langendorf P.C. first argues on appeal that the circuit court failed to consider all the *quantum meruit* factors in determining the appropriate award of attorney fees. However, our review of the transcript refutes that claim. Near the end of the evidentiary hearing, the circuit court explained its reasons for awarding Langendorf P.C. $1,015 in attorney fees. Namely, the court

5

articulated that, in the context of a claim for attorney fees based on a theory of *quantum meruit*, a court "[f]irst *** considers" the reasonable hourly rate in the area for similar services and, then, "looks at the reasonable services provided." As to the reasonable hourly rate, the court found that, although Catherine had asked Langendorf to work on her case himself, that did not necessarily mean that Langendorf had himself prepared all the letters and documentation during his time on the case, rather than other attorneys or his paralegals or staff. The court also found that the "proper and reasonable" hourly rate for Du Page County was $350 per hour for comparable work.

¶ 16     Turning next to the reasonableness of Langendorf's services, the court found that the Dead-Man's Act barred Langendorf's testimony regarding his alleged meetings with Catherine. The court also noted that Langendorf had not offered any documentation as to the meetings and could not remember the exact time of the meetings. The court noted that the only documents Langendorf had offered were those in the parties' briefs, which indicated that he had rendered 1.9 hours in services. Additionally, the court concluded that, although the Dead-Man's Act barred Langendorf's testimony regarding his meetings with Catherine, based on the time Langendorf had her "file" and the "limited work" he had documented, he had spent a reasonable amount of one hour meeting with Catherine. The court then adjudicated the lien in the amount of "2.9 hours at $350 per hour for a total of $1,015 payable to [Langendorf P.C.]." Thus, the circuit court properly assessed the *quantum meruit* factors, and we cannot say that the amount of the award was against the manifest weight of the evidence.

¶ 17     Still, seemingly based on the fact that the circuit court did not make express findings relevant to this *quantum meruit* factor, Langendorf P.C. now argues that the circuit court failed to consider Langendorf's skill and standing in determining the award of attorney fees. Additionally,

Langendorf P.C. argues that the circuit court also failed to consider Langendorf's hourly rate as an arbitrator, which was $500 per hour.

¶ 18    We have repeatedly rejected the argument by litigants that the circuit court did not consider a statutory factor solely because it did not make express findings as to that factor in its order. See, *e.g.*, *Shen v. Shen*, 2015 IL App (1st) 130733, ¶ 136 ("[W]e reject [the] argument that the court did not consider all the statutory factors solely because it did not make specific findings in the order."); *In re Marriage of Berk*, 215 Ill. App. 3d 459, 464 (1991) (stating that the fact that the circuit court did not specifically list a factor did not mean that the court did not consider it in determining the best interests of the child at issue). Furthermore, it is true that, when determining an award of attorney fees based on a theory of *quantum meruit*, a court must consider the attorney's skill and standing and the customary charge for the work that he or she performed when these factors are relevant. See *Wegner v. Arnold*, 305 Ill. App. 3d 689, 693 (1999). Here, however, it is unclear how the circuit court erred by declining to set Langendorf's hourly rate at $500 per hour when he testified that he received $500 per hour as an arbitrator, but there was no indication that he was acting in the capacity of an arbitrator while representing Catherine. Thus, we will not disturb the circuit court's award of attorney fees based only on the fact that it did not expressly note Langendorf's skill and standing or hourly rate as an arbitrator in its order below.

¶ 19    Langendorf P.C. also argues that the circuit court erred by setting an hourly rate of $350 per hour for Langendorf's work in this case based on the customary and reasonable hourly rate for comparable work in Du Page County. Langendorf P.C. contends that the court should have instead based Langendorf's hourly rate on the usual rate for comparable work in Cook County because that is the county in which the firm was located, the attorneys in the firm typically practiced, and Langendorf performed his work on Catherine's case.

7

¶ 20    In Illinois, a court is not bound by the opinion of attorneys as to what constitutes reasonable attorney fees. *In re Marriage of Pitulla*, 202 Ill. App. 3d 103, 113 (1990). Rather, when assessing the value of legal services rendered, the court may rely on the knowledge that it has acquired in the discharge of professional duties. *Richheimer v. Richheimer*, 59 Ill. App. 2d 354, 365 (1965). Moreover, when considering the appropriate amount of attorney fees, courts should look to what is customarily and usually charged for similar services in the court where the services were rendered. See, *e.g.*, *In re Marriage of Malec*, 205 Ill. App. 3d 273, 293 (1990) ("[A]ttorneys are entitled to recover a fee based on what is usually and customarily charged and paid for like services in the court where the services were rendered."); *In re Marriage of Anguili*, 134 Ill. App. 3d 417, 424 (1985) (noting case law that stated that an award for attorney fees should be based on what is usually and customarily charged and paid for like services in the court where the services were rendered); *Crane v. Roselle*, 157 Ill. App. 595, 598 (1910) ("The inquiry should be what is usually and customarily charged and paid for like services in the court where said services were rendered, where the fee is the subject of contract or where the matter is between parties competent to contract.").

¶ 21    This case originated and was litigated in the circuit court of Du Page County. Accordingly, the circuit court properly based Langendorf's hourly rate on the usual rate for similar services performed in Du Page County rather than in Cook County, regardless of where Langendorf P.C. was physically located, the attorneys at the law firm typically practiced, or Langendorf performed the tasks underlying his representation of Catherine.

¶ 22    Next, Langendorf P.C. argues that the circuit court erred by limiting the award of attorney fees so as to compensate Langendorf only for time spent for which he had provided documentary support in the form of letters he had written, medical records, and "the receipt of certain physician

8

liens." Langendorf P.C. contends the court erred by ignoring the additional evidence Langendorf offered through his testimony.

¶ 23    It is axiomatic that we review a circuit court's factual findings made during an evidentiary hearing under the manifest-weight-of-the-evidence standard, and that, under this standard, we will not substitute our judgment for that of the circuit court as to the credibility of witnesses, the weight to be given to the evidence, or the inferences to be drawn therefrom. See, *e.g.*, *In re Parentage of W.J.B.*, 2016 IL App (2d) 140361, ¶ 25. Therefore, even if the circuit court gave more weight to Langendorf's documentary evidence than to his testimony, or ascribed little to no weight to his testimony altogether, we will not vacate the award of attorney fees solely on either of these bases. See *Wegner v. Arnold*, 305 Ill. App. 3d 689, 693 (1999) ("The trial judge has broad discretion in matters of attorney fees due to the advantage of close observation of the attorney's work and the trial judge's deeper understanding of the skill and time required in the case.").

¶ 24    Moreover, Langendorf P.C.'s reasons for believing that the circuit court did not at all consider Langendorf's testimony relevant to the time that he spent representing Catherine are unclear. However, to the extent that its belief is based on the fact that the circuit court did not expressly mention the relevant portions of Langendorf's testimony in determining that he had rendered only 2.9 hours of reasonable services, we have expressed before that just because the circuit court did not explicitly mention a piece of evidence does not mean that it did not consider it. See *Motorola Solutions, Inc. v. Zurich Insurance Co.*, 2015 IL App (1st) 131529, ¶ 129. Thus, we reject Langendorf P.C.'s argument to the contrary in this case.

¶ 25    Additionally, Langendorf argues that the circuit court improperly permitted counsel for plaintiff to testify during the evidentiary hearing without first having been sworn in as a witness. Indeed, Illinois Rule of Evidence 603 (eff. Jan. 1, 2011) requires every witness to declare, by oath

9

or affirmation, that he or she will testify truthfully before taking the stand. However, while our review of the record shows that counsel for plaintiff was never sworn in before addressing the court during the evidentiary hearing, our review also shows that counsel never testified but instead only argued in support of plaintiff's position while referencing sworn statements that were made by others. Because counsel never testified during the proceedings, the circuit court did not err by allowing counsel to address the court without first having been sworn in.

¶ 26 Having resolved Langendorf P.C.'s foregoing arguments, we further conclude that, even if the reasoning and logic applied by the circuit court were erroneous for the reasons that it advances, the award of attorney fees was nevertheless adequately supported by the evidence. See *In re Kendale H.*, 2013 IL App (1st) 130421, ¶ 31 (explaining that the question on appeal from a lower court's judgment "is the correctness of the result below, not the correctness of the reasoning on which the result was reached," and that "an appellate court may affirm a lower court's judgment on any ground supported by the record."). To support Langendorf P.C.'s position at the evidentiary hearing, Langendorf testified, relevant to his skills and experience, that he had been an attorney since 1980, practiced in Du Page and Cook Counties "for a number of years," and performed appellate work and worked as an arbitrator. He further testified that he had participated in "million dollar settlements" and regularly charged $500 per hour in his role as an arbitrator.

¶ 27 As to the nature of the work he performed, Langendorf testified that he had "signed up this case" and met with Catherine three separate times in his office. Langendorf described Catherine as "very thorough" and explained that she had insisted that he "handle everything personally," wanted to know "every detail" about what he had done, and "went over everything." Langendorf stated that he had performed every task in this case himself, in accordance with Catherine's request, and that these tasks included sending faxes, speaking to multiple insurance

10

adjusters, investigating related to the fact that "she was knocked over by a floral tray in a Home Depot," calling medical care providers, rescheduling her medical appointments, coordinating her medical billing, working to ensure that the video footage of the June 28, 2019, incident at Home Depot was preserved, and talking with Catherine over the phone and meeting with her in person.

¶ 28    However, undercutting Langendorf P.C.'s position, Langendorf testified that, with respect to the total time he spent working on Catherine's case, "the best [he could] do [was] estimate it," and that he "[didn't] want" to state the exact time that he expended "because that's not what [he did] in a personal injury case," but that it was a "significant amount of time." As to the individual tasks that he completed, Langendorf testified that he "spent at least three hours" talking to Catherine on the phone and four hours meeting with her in person, but he did not offer documentation to support this testimony. As to the remaining tasks, he testified only that he spent "particular" time finding the correct defendants in this case and "a significant amount of time" working to ensure that the video footage of the June 28, 2019, incident was preserved. The only documentation that Langendorf provided the circuit court to support his overall claim was "the receipt of certain physician liens," "limited medical records," and letters that he drafted.

¶ 29    Additionally, the circuit court noted that the "pre-suit" work that Langendorf had completed typically "involves a multitude of attorneys and paralegals and staff," regardless of whether Catherine had asked Langendorf to complete the work himself. The court also found that the reasonable hourly rate to be applied for the fee calculation was $350 per hour, which was the usual rate for similar work in Du Page County and which countered Langendorf's desired rate of $500 per hour, based on the usual rate in Cook County. In light of the evidence presented during the evidentiary hearing and Langendorf's failure to make more specific showings to support his

11

position, it cannot be said that the circuit court's award of $1,015 in attorney fees was against the manifest weight of the evidence.

¶ 30 As a final note, Langendorf P.C. argues that the circuit court erred by finding that Langendorf's testimony as to his meetings with Catherine was barred by the Dead-Man's Act. Because we have already concluded that the circuit court's award of attorney fees was not against the manifest weight of the evidence, even when considering Langendorf's testimony regarding his meetings with Catherine, we need not address this issue. See *DeLapaz SelectBuild Construction, Inc.*, 394 Ill. App. 3d 969, 977 (2009) (declining to address the argument that the attorney fees at issue were not established on a *quantum meruit* basis, after already concluding that the circuit court did not abuse its discretion in its award of attorney fees).

¶ 31                                     III. CONCLUSION

¶ 32 The judgment of the circuit court of Du Page County is affirmed.

¶ 33 Affirmed.