30 June 1999

No. 2--98--0396

_________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_________________________________________________________________

SHARON F. WEGNER, Administrator ) Appeal from the Circuit Court

of the Estate of Bruce E.       ) of McHenry County.

Wegner, Deceased,               )

                                )

Plaintiff-Appellee,        )

                                )

v.                           ) No. 96--LA--288

                                )

BRIAN M. ARNOLD,                )

                                )

Defendant                  )

                                ) Honorable  

(James A. Hagstrom,             ) James C. Franz,

Petitioner-Appellant).          ) Judge, Presiding.        

_________________________________________________________________

JUSTICE THOMAS delivered the opinion of the court:

The petitioner, James A. Hagstrom, filed a petition for attorney fees after the settlement of a wrongful death case filed by the plaintiff, Sharon F. Wegner (Mrs. Wegner), as administrator of the estate of the decedent, Bruce E. Wegner, against the defendant, Brian M. Arnold.  The trial court awarded Hagstrom $7,000 in attorney fees, which covered his hourly fee for the time he spent working on the case up to the date of his discharge on August 28, 1997, by the client, Mrs. Wegner.  Hagstrom appeals, contending that the trial court should have awarded him one-third of the $100,000 settlement as his 
quantum
 
meruit
 under 
Rhodes v. Norfolk & Western Ry. Co.
, 78 Ill. 2d 217
 
(1979), because he was discharged two days after defense counsel recommended to the defendant's insurance company that the case be settled for the policy limit of $100,000.

The record reveals that on January 13, 1993, at approximately 10:30 p.m., the decedent was walking along a roadway when he was struck from behind by an automobile and fatally injured.  Shortly after the accident, the decedent's wife, Mrs. Wegner, contacted attorney Hagstrom, who agreed to represent her in opening a probate estate and in investigating the accident.  Mrs. Wegner agreed to pay Hagstrom a $1,800 retainer fee and an hourly fee of $140 per hour in connection with those services.  On September 16, 1996, Mrs. Wegner entered into a contingent fee agreement with Hagstrom in connection with the filing of a wrongful death and survival action against the driver of the vehicle that struck her husband.  That agreement provided in part:

"In consideration of all legal services to be rendered in this cause, claimant agrees to pay and does hereby assign as a lien to the attorney, the sum of one-third (1/3) of the gross amount recovered through settlement, suit or trial."

By letter dated August 28, 1997, Mrs. Wegner terminated Hagstrom as her attorney and notified him that the law firm of Pappas, Power, and Marcus (the successor attorneys) would be representing her in her lawsuit.  She also requested that Hagstrom send her file to her new attorneys.  On August 29, 1997, Hagstrom sent Mrs. Wegner a letter stating that he had a lien on the file and a right of 
quantum
 
meruit
 in the event of discharge.  Accompanying the letter, he sent an itemized statement in the amount of $6,355, showing that he spent 53 hours on the case from February 2, 1996, through March 29, 1997.  The statement also itemized the various costs advanced and showed a credit for the previously paid $1,800 retainer.  Thereafter, the amount requested was not paid by Mrs. Wegner.

On September 30, 1997, the successor attorneys filed a motion for substitution of counsel and to compel the transfer of client materials.  In response, Hagstrom filed a response to the motion to compel and a counterclaim for attorney fees sounding in 
quantum
 
meruit
, asserting that he had retained a lien.  Thereafter, the matter was continued, and on January 6, 1998, Hagstrom filed a verified motion asserting that he had an equitable lien and that he was entitled to an award of attorney fees in 
quantum
 
meruit
 in the amount of one-third of the funds tendered to the plaintiff by the defendant in settlement of the case.  In his amended petition, Hagstrom alleged that, two days before Mrs. Wegner terminated Hagstrom, the defendant's attorney, Jeffrey T. Zucci, recommended to the defendant's insurer, Allstate Insurance Company, that it offer the $100,000 policy limit in settlement of the case.  The amended petition further alleged that Hagstrom had no knowledge of defense counsel's settlement recommendation until the court call on September 30, 1997, when Zucci informed him that the recommendation had been made right after the first scheduled depositions were taken on August 25, 1997, and that the actual offer of settlement would be forthcoming shortly.  In support of his amended petition, Hagstrom attached the affidavit of attorney Zucci, which stated that on November 17, 1997, he made a formal offer of $100,000 to Mrs. Wegner's successor attorneys to settle the case.  He further stated in his affidavit that his offer to settle was predicated on the pleadings, investigation, discovery, and depositions occurring in the case on or prior to August 25, 1997.  Zucci noted that after he made the recommendation to settle on August 26, 1997, the following steps were taken:  he prepared deposition summaries, which he completed on October 1, 1997; Allstate reviewed the summaries in light of Zucci's recommendation; and, finally, Allstate conveyed the authority to Zucci to make the settlement offer.

On February 6, 1998, the successor attorneys filed a response to Hagstrom's verified amended petition.  The response and accompanying affidavits of Mrs. Wegner and her attorneys indicated that Mrs. Wegner terminated Hagstrom because she had lost trust in his ability in that attorney Hagstrom did not know the policy limit of the insurance coverage at issue, that he fell asleep during her deposition, and that he failed to object when the opposing attorney  asked her questions at the deposition that she considered to be of a private nature.

On February 25, 1998, Hagstrom filed a verified reply to the successor attorneys' response to the fee petition.  Therein, he explained that he knew the policy limits, and, although the actual policy was not produced at the time of Mrs. Wegner's deposition, there was no question that it would be available.  In his verified reply, attorney Hagstrom either rebutted or gave adequate explanations for the allegations in Mrs. Wegner's response, noting that the real reason for his termination was due to a misunderstanding over Mrs. Wegner's deposition testimony.  Hagstrom attached a second affidavit from attorney Zucci to his reply.  That affidavit stated that Zucci had canceled future depositions in the case that had been scheduled for November 6, 1997, because he already had recommended that the policy limit of $100,000 be paid.  Zucci further stated that he first became personally aware on September 22, 1997, that Mrs. Wegner had retained new counsel.  Zucci also stated in his second affidavit that from the inception of the case and at all times thereafter attorney Hagstrom knew that the applicable policy limits in the case were $100,000 per person and $300,000 per occurrence.

Following a hearing, the trial court awarded attorney Hagstrom $7,000 in attorney fees and costs.  In so doing, the court found that 
Rhoades v. Norfolk & Western Ry. Co.
, 78 Ill. 2d 217 (1979), was inapplicable and therefore Hagstrom was not entitled  to a one-

third percentage of the settlement proceeds.

On appeal, Hagstrom first argues that the trial court abused its discretion in not awarding him one-third of the settlement proceeds under a 
quantum
 
meruit
 theory of recovery.

Under Illinois law, a client may discharge his attorney at any time, with or without cause.  
Rhoades
, 78 Ill. 2d at 227-28.  When a client terminates an attorney working under a contingent-fee contract, the contract ceases to exist and the contingency term, whether the attorney wins, is no longer operative.  
In re Estate of Callahan
, 144 Ill. 2d 32, 40 (1991).  A discharged attorney is entitled to be paid on a 
quantum
 
meruit
 basis a reasonable fee for services rendered before discharge.  
Rhoades
, 78 Ill. 2d at 230.  Under the theory of 
quantum
 
meruit
, the trial court is literally to award the attorney " 'as much as he deserves.' "  
Kannewurf v. Johns
, 260 Ill. App. 3d 66, 74 (1994), quoting 
Lee v.  Ingalls Memorial Hospital
, 232 Ill. App. 3d 475, 478 (1992).  The trial judge has broad discretion in matters of attorney fees due to the advantage of close observation of the attorney's work and the trial judge's deeper understanding of the skill and time required in the case.  
Kannewurf
, 260 Ill. App. 3d at 74.  In making its determination, the trial court should assess all of the relevant factors, including the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the client.  
Kannewurf
, 260 Ill. App. 3d at 74.  In cases in which an attorney who has done much work is fired immediately before settlement is reached, the factors involved in determining a reasonable fee would justify a finding that the entire contract fee is the reasonable value of services rendered.  
Rhoades
, 78 Ill. 2d at 230.

In the present case, attorney Hagstrom argues that he did "much work" in this case, he was fired immediately before settlement, and the result obtained was entirely due to his efforts.  He maintains that under these circumstances 
Rhoades
 indicates that the one-third contract amount was the reasonable value of the services  he rendered for his client.  In response, Mrs. Wegner's successor attorneys define the phrase "much work" from 
Rhoades
 as meaning more than 200 hours of work and argue that the language relied upon by Hagstrom from 
Rhoades
 means only that, if Hagstrom had done more than 200 hours of work and the client received some benefit, he would be entitled to a fee based on the number of hours worked times his hourly fee, which might equal or exceed the contract amount.

We disagree with the successor attorneys' overly narrow reading of 
Rhoades
.  Prior to the 
Rhoades
 decision, the rule in Illinois had been that an attorney was entitled to full contract fees if the dismissal was without cause.  See 
Town of Mt. Vernon v. Patton
, 94 Ill. 65, 67 (1879).  In announcing the new rule, the 
Rhoades
 court relied on the California Supreme Court case of 
Fracasse v. Brent
, 6 Cal. 3d 784 (1972), noting that that court had rejected the argument that the new rule would lead to the discharging of attorneys to avoid attorney fees.  
Rhoades
, 78 Ill. 2d at 230.  In 
Fracasse
, the court noted:

"To the extent that such discharge occurs 'on the courthouse steps,' where the client executes a settlement obtained after much work by the attorney, the factors involved in a determination of reasonableness would certainly justify a finding that the entire fee was the reasonable value of services rendered."  
Fracasse
, 6 Cal. 3d at 791.

We find nothing in 
Rhoades
 or 
Fracasse
 that would preclude the application of the above-quoted language to the facts of this case.  Contrary to the plaintiff's assertions, there is no language in either case implying that an award of contract fees to a discharged attorney as 
quantum
 
meruit
 is limited only to cases where the amount of work done from an hourly fee standpoint is roughly equal to the contract fee.  Instead, the present case presents the precise type of situation contemplated by those cases for which the reasonable value of services rendered would be the entire contract fee.  Accordingly, we find that the trial court erred in finding that 
Rhoades
 was inapplicable and that Hagstrom's recovery was limited to an hourly fee for time spent working on the case.  

The cases cited by the successor attorneys are distinguishable.  In 
In re Estate of Murphy
, 56 Ill. App. 3d 1037 (1978), a fired law firm, hired on a 25% contingent fee basis, tried to collect that fee based on 25% of a $4,000 settlement made to but then rejected by the client.  The successor attorneys were eventually able to negotiate an $8,000 settlement for the client, which was accepted.  The appellate court held that 
quantum
 
meruit
 and not the contingent-fee contract should be the basis for the fired firm's compensation.  
Murphy
, 56 Ill. App. 3d at 1040.  Unlike the present case, the settlement offer obtained in 
Murphy
 was rejected by the client.  Moreover, the case did not discuss the language from 
Rhoades
 regarding the discharge of an attorney immediately before settlement.  Similarly, 
Susan E. Loggans & Associates v. Estate of Magid
, 226 Ill. App. 3d 147 (1992), relied upon by the successor attorneys, involved a rejected settlement offer and did not involve the language from 
Rhoades
 at issue here.

The factors involved in determining a reasonable fee in 
quantum
 
meruit
 support the conclusion that the contract fee should be awarded in this case.  Here, attorney Hagstrom expended at least 53 hours of legal work on the case over an 18-month period.  During that time, he conducted sufficient work on the case to cause attorney Zucci to recommend that Allstate pay the policy limit of $100,000 to settle the claim, which Mrs. Wegner accepted.  Thus, Hagstrom's efforts obtained the maximum gross benefit available to the client.  It is also clear from Zucci's affidavit that the recommendation was based on the pleadings, investigation, discovery, and depositions done prior to the date of discharge.  Thus, the result was solely attributable to Hagstrom's legal work.

Mrs. Wegner's successor attorneys argue that the record contains instances evincing Hagstrom's lack of skill and responsibility in managing the case and these militate against a finding that the contract fee was reasonable.  Specifically, it is argued that Hagstrom unnecessarily opened a probate estate, that he pleaded a survival count which amounted to a roadblock to reducing a $10,000 lien held by American Family Insurance, that in the wrongful death complaint he pleaded facts indicating that the decedent was contributorily negligent, and that he was unresponsive to Mrs. Wegner's request for policy coverage information.

Upon review of the record, we find no support for the above claims purporting to show a lack of skill and responsibility.  First, the successor attorneys fail to cite anything in the record or any appropriate authority for their claim that Hagstrom unnecessarily opened a probate estate.  Similarly, there was no evidence presented that the filing of a survival count was a roadblock to removing a lien.  We find unpersuasive the argument that Hagstrom pleaded facts establishing conclusively that the decedent was at fault.  It appears that Hagstrom pleaded that the decedent "was walking westbound on the right hand edge of the pavement" and that the defendant's automobile "struck decedent from behind."  Hagstrom did not allege that the decedent was contributorily negligent and denied that he was in the plaintiff's reply to the defendant's affirmative defenses.  The successor attorneys later amended the complaint to allege that the decedent "was walking westbound on the shoulder/curb."  We do not find that Hagstrom's pleadings amounted to an allegation that the decedent was at fault.  Further, since defense counsel had already recommended that the case be settled at the time of the amendment, we do not find Hagstrom's pleading to be a significant factor calling for a reduction in attorney fees.  Lastly, Hagstrom's explanation regarding the production of the insurance policy at issue was reasonable and unrebutted.  Under the circumstances, we do not find that this factor supports the claim that Hagstrom is not entitled to the contract fee.

Next, Hagstrom argues that his contingent-fee agreement with Mrs. Wegner created an equitable lien entitling him to one-third of the proceeds of the settlement.

The filing of a notice of lien by an attorney during the existence of the attorney-client relationship is a prerequisite for perfecting the statutory attorney's lien.  
The Department of Public Works v. Exchange National Bank
, 93 Ill. App. 3d 390, 394 (1981).  However, an attorney may still be able to establish an equitable lien even if he has failed to properly perfect a statutory lien.   See 
Department of Public Works
, 93 Ill. App. 3d at 394.  To assert an equitable lien, the attorney must establish the existence of an equitable assignment by his client to him of a portion of a fund.  
Department of Public Works
, 93 Ill. App. 3d at 394.  There is a clear distinction between an assignment of a portion of a fund and a mere personal promise by the client to pay attorney fees in the amount of a portion of the fund recovered or collected.  
Department of Public Works
, 93 Ill. App. 3d at 394.  A mere personal promise to pay cannot support an equitable lien.  
Department of Public Works
, 93 Ill. App. 3d at 394.

Here, the contingent-fee agreement between attorney Hagstrom and Mrs. Wegner provided that Mrs. Wegner "assign as a lien to the attorney, the sum of one-third (1/3) of the gross amount recovered through settlement."  Thus, Hagstrom clearly established that his client had made an assignment of a portion of a fund rather than a mere promise to pay.  Thus, under 
Department of Public Works
, it would seem that attorney Hagstrom would be entitled to assert an equitable assignment.  However, we further find that his ability to assert any equitable assignment is limited to the amount he is entitled to recover in 
quantum
 
meruit
 rather than an automatic one-

third of the settlement.  Hagstrom's argument fails to take into consideration that, when a client terminates an attorney working under a contingent-fee contract, the contract ceases to exist.  See 
Callahan
, 144 Ill. 2d at 40.  Furthermore, Hagstrom's approach is contrary to the holding in 
Rhoades
 that a discharged attorney is not entitled to recover contract fees from his former client but is limited to reasonable fees for services rendered.  See 
Rhoades
, 78 Ill. 2d at 229-30.  It would also be contrary to the public policy entitling clients to retain counsel of their choosing and to pay fees commensurate with the services rendered.  See 
Albert Brooks Friedman, Ltd. v. Malevitis
, No. 1--97--2461, slip op. at 5 (March 26, 1999).

Given our holding that under 
Rhoades
 an attorney discharged immediately prior to settlement may be entitled to the contract fee as the reasonable value of his services and that the circumstances of the present case indicate that this is an appropriate case for that rule, we vacate the trial court's award of attorney fees and remand the cause for further proceedings.  On remand, the trial court should determine the amount of attorney fees that Mrs. Wegner's successor attorneys are entitled to on a 
quantum
 
meruit
 basis rather than on the basis of a contingency fee of the entire $100,000 settlement.  The trial court should then award the contract fee to attorney Hagstrom less the amount that is to be awarded to the successor attorneys in 
quantum
 
meruit
.  We note that, in assessing the fees to be awarded the successor attorneys, the trial court should consider, among other factors, that the successor attorneys benefitted the client by negotiating the reduction of two liens placed on the lawsuit.

For the foregoing reasons,
 we vacate the order of the circuit court of McHenry County on the petition for attorney fees, and we remand the cause for the trial court to reapportion the respective attorney fees as directed.

Order vacated; cause remanded with directions.

McLAREN and RAPP, JJ., concur.