In the

# United States Court of Appeals
## For the Seventh Circuit

No. 16-2135

DUSTAN DOBBS,

*Plaintiff-Appellant,*

*v.*

DEPUY ORTHOPEDICS, INC. et al.,

*Defendants,*

*v.*

GEORGE E. MCLAUGHLIN, on behalf of JOHN GEHLHAUSEN, P.C., and on behalf of ANTHONY G. ARGEROS, P.C.,

*Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
Case No. 15 cv 8032 — **Sharon Johnson Coleman**, *Judge.*

ARGUED NOVEMBER 4, 2016 — DECIDED DECEMBER 1, 2016

Before FLAUM and KANNE, *Circuit Judges*, and MAGNUS-STINSON, *District Judge*.*

KANNE, *Circuit Judge*. Dustan Dobbs hired Appellees George McLaughlin, John Gehlhausen, and Anthony Argeros as his attorneys on a contingency fee basis. Appellees filed Dobbs's product-liability claim against DePuy Orthopedics in the DePuy ASR Hip Implant Multidistrict Litigation in the Northern District of Ohio. DePuy subsequently offered to settle all claims in that litigation.

Despite advice and pressure from McLaughlin, Dobbs refused to settle and discharged Appellees. Later, Dobbs changed his mind and decided to accept the settlement offer. Because the employment contract was inoperative when Dobbs settled, Appellees sought compensation under a *quantum meruit* theory. The district court awarded attorneys' fees in the full amount of the original contract. Dobbs argues that the district court abused its discretion by not analyzing the factors that Illinois courts look to when calculating reasonable attorneys' fees under *quantum meruit*. We agree.

## I. BACKGROUND

Doctors replaced Dobbs's left hip with a DePuy ASR artificial hip. Unfortunately, the ASR model was defective. And those defects caused Dobbs pain and other hip problems. Roughly four years after the surgery, Dobbs hired Appellees to represent him in a product-liability suit against DePuy. Appellees took the case on a 35 percent contingency fee.

---

*The Honorable Jane Magnus-Stinson, of the United States District Court for the Southern District of Indiana, sitting by designation.

Appellees filed Dobbs's complaint in the DePuy ASR Hip Implant Multidistrict Litigation in the Northern District of Ohio. A year later, DePuy proposed a "Global Settlement" in that litigation. DePuy offered represented parties $250,000 and unrepresented parties $165,000.[1]

McLaughlin advised Dobbs to accept the settlement offer because going to trial would be expensive, time consuming, and risky. Dobbs told McLaughlin that he wanted to register for the settlement but that he did not want to "agree with the settlement offer," "waive any rights to a trial," or "be forced to accept the present settlement offer from DePuy." (R. 32-1 at 8.) Despite McLaughlin's continued insistence that Dobbs's best option was to take the settlement, Dobbs decided that the base award did not properly compensate him for his injuries. Dobbs became frustrated with McLaughlin, believing that McLaughlin was trying to force him to settle his case when he wanted to take it to trial.

Dobbs then filed a motion to remove McLaughlin as his attorney on October 17, 2014.[2] McLaughlin acknowledged that he no longer represented Dobbs and moved to withdraw as counsel on December 30, 2014. Acting *pro se*, Dobbs

---

[1] Plaintiffs who meet additional criteria also have a chance to file claims for enhancements to the base award. Dobbs is in the process of seeking enhancements, but Appellees have expressly waived their right to attorneys' fees based on any enhancement Dobbs may receive.

[2] Argeros died during the course of representation, and, as a solo practitioner, his representation of Dobbs ended. Moreover, McLaughlin left John Gehlhausen, P.C. Gehlhausen remains entitled to a third of any share McLaughlin receives even though he stopped representing Dobbs in early April 2014.

ultimately chose to accept the settlement offer on February 5, 2015. But because he was considered "represented" for purposes of the settlement offer, Dobbs received $250,000.

Because Dobbs terminated the contract before he accepted the settlement offer, Appellees could not recover the contingency fee. McLaughlin then asserted a lien on the award and sought attorneys' fees under a *quantum meruit* theory. Judge Katz in the Northern District of Ohio ordered mediation and personally mediated the negotiations. When the parties could not resolve the dispute, Judge Katz transferred the case to the Northern District of Illinois. There, Judge Coleman held that the full contingency fee was a reasonable award under *quantum meruit*. Dobbs now appeals that decision.

## II. ANALYSIS

We review a district court's award of attorneys' fees for an abuse of discretion. *Goesel v. Boley Int'l (H.K.) Ltd.*, 806 F.3d 414, 419 (7th Cir. 2015); *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 654 (7th Cir. 2007). We have described that standard of review as "highly deferential" because the district court is in the best position to determine the reasonableness of an award for work done on litigation in that court. *Montanez v. Simon*, 755 F.3d 547, 552–53 (7th Cir. 2014); *Gautreaux*, 491 F.3d at 659. Highly deferential review, however, does not give the district court unfettered discretion. The district court "still bears the responsibility of justifying its conclusions." *Sottoriva v. Claps*, 617 F.3d 971, 975 (7th Cir. 2010).

We apply state law to determine whether the district court's award is reasonable. *See Fednav Int'l Ltd. v. Cont'l Ins. Co.*, 624 F.3d 834, 838 (7th Cir. 2010). A federal court sitting in

diversity jurisdiction typically applies the choice-of-law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941). Generally, when a case is transferred from a district court with proper venue to another district court, the transferee court will apply the choice-of-law rules of the state in which the transferor court sits. *See Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964). Here, that suggests that Ohio substantive law—including its choice-of-law rules—would apply. Dobbs's claim, however, was filed in the Northern District of Ohio only because the DePuy multidistrict litigation was already in progress there. Dobbs's complaint stated that the Northern District of Illinois was the appropriate venue absent the multidistrict litigation. That advises treating the Northern District of Illinois as the original venue.

In fact, district courts in our circuit have taken that approach: foreign cases filed directly in a district court as a part of ongoing multidistrict litigation are treated as having originated outside of that district. *E.g.*, *In re Watson Fentanyl Patch Prods. Liab. Litig.*, 977 F. Supp. 2d 885, 888–89 (N.D. Ill. 2013); *In re Yasmin & Yaz (Drospirenone) Mktg., Sales Practices & Prods. Liab. Litig.*, No. 3:09-MD-02100-DRH, 2011 WL 1375011, at *5 (S.D. Ill. Apr. 12, 2011). We ratify that approach here and apply Illinois's choice-of-law rules.

Illinois applies the choice-of-law analysis from the Restatement (Second) of Conflict of Laws. *Morris B. Chapman & Assocs., Ltd. v. Kitzman*, 739 N.E.2d 1263, 1269 (Ill. 2000). Section 221 of the Restatement governs restitution cases and instructs courts to apply the law of the state with the most significant relationship to the restitution claim. The Restatement lists several factors courts should consider, including:

the place where the parties' relationship centers; the place where the benefit was conferred and received; and the parties' domiciles, residences, and places of incorporation or business. Restatement (Second) of Conflict of Laws § 221.

Illinois has the most significant relationship to this dispute. The contract was entered into in Illinois, Dobbs is an Illinois resident, Argeros resided and did business in Illinois, and the events giving rise to the underlying lawsuit occurred in Illinois. The only contact with Ohio was the venue of the multidistrict litigation. Thus, Illinois law applies.

Under Illinois law, a client can fire an "attorney at any time with or without cause." *In re Estate of Callahan*, 578 N.E.2d 985, 987 (Ill. 1991). If a client terminates the services of an attorney who was retained on a contingency fee contract, the contract ceases to be effective and the attorney can no longer recover under that contract. *Id.* at 988; *Todd W. Musburger, Ltd. v. Meier*, 914 N.E.2d 1195, 1208 (Ill. App. Ct. 2009). A discharged attorney is left to recover compensation for services rendered under a theory of *quantum meruit* only. *Thompson v. Buncik*, 961 N.E.2d 280, 283 (Ill. App. Ct. 2011); *Meier*, 914 N.E.2d at 1208–09. *Quantum meruit* means "as much as he deserves." *Thompson*, 961 N.E.2d at 283 (internal quotation marks omitted); *see also Black's Law Dictionary* 1276 (8th ed. 2004) (defining *quantum meruit* as "[t]he reasonable value of services; damages awarded in an amount considered reasonable to compensate a person who has rendered services in a quasi-contractual relationship"). The analysis therefore requires an investigation into what fees the attorney earned before being fired.

Courts must examine the attorneys' work to decide what a reasonable fee would be, and the "burden of proof is on

the attorney to establish the value of his services." *Thompson*, 961 N.E.2d at 283. When determining a reasonable fee for services rendered, Illinois courts consider "the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual and customary charge for that type of work in the community, and the benefits resulting to the client." *Will v. Nw. Univ.*, 881 N.E.2d 481, 504–05 (Ill. App. Ct. 2007) (citing *In re Estate of Callahan*, 578 N.E.2d at 990). Although an attorney may not recover under the original contingency fee contract, "in cases in which an attorney who has done much work is fired immediately before a settlement is reached, the factors involved in determining a reasonable fee would justify a finding that the entire contract fee is the reasonable value of services rendered." *DeLapaz v. SelectBuild Const. Inc.*, 917 N.E.2d 93, 97 (Ill. App. Ct. 2009) (quoting *Rhoades v. Norfolk & W. Ry. Co.*, 399 N.E.2d 969, 975 (Ill. 1979)).

In this case, the district court abused its discretion by not properly analyzing whether awarding the full value of the contingency fee was reasonable. First, although we have described our abuse-of-discretion standard in this context as "highly deferential," the reason for doing so is inapplicable here. We give district courts wide latitude in this context because the judge making the attorneys' fees decision is usually the same judge before whom the litigation giving rise to the attorneys' fees occurred. Consequently, that judge is normally in the best position to determine whether a given fee is consistent with the attorneys' efforts in the case. Here, Appellees' litigation work occurred in the Northern District of Ohio. The attorneys' fees dispute was transferred to the Northern District of Illinois only after Judge Katz held that

he couldn't rule on the issue because he had served as the parties' mediator. Because Judge Coleman did not have firsthand knowledge about the litigation giving rise to Appellees' claim for attorneys' fees, she needed to analyze the factors Illinois courts have held are important when awarding attorneys' fees under *quantum meruit*.

The district court's decision contains limited discussion of the relevant factors. The court listed the factors mentioned above but did not consider evidence related to the factors; rather, the judge merely recited Appellees' claim that they "adhered to all case management orders, collected Dobbs['s] medical records, act sheets, monitored the *DePuy* litigation, and attended to all details of maintaining Dobbs'[s] case." (R. 42 at 7.) The only factor specifically addressed in the opinion was that Dobbs "undoubtedly benefitted" from Appellees' work. (R. 42 at 7.) The analysis left a whole host of relevant factors unaccounted for. How many hours did Appellees spend on Dobbs's case? How difficult or novel was the underlying product-liability claim? How much would an attorney ordinarily charge for this type of work? What were Appellees' skill and standing in the legal community? *See Will*, 881 N.E.2d at 504–05 (citing *In re Estate of Callahan*, 578 N.E.2d at 990).

The district court also relied in part on the rule that when "an attorney who has done much work is fired immediately before a settlement is reached, the factors involved in determining a reasonable fee would justify a finding that the entire contract fee is the reasonable value of services rendered." *DeLapaz*, 917 N.E.2d at 97 (quoting *Rhoades*, 399 N.E.2d at 975). Although this is a correct articulation of Illinois law, the district court's analysis does not comply with

how Illinois courts have applied the rule in the past. The rule applies when the attorney did "much work," which still requires analyzing the factors used to determine a reasonable fee under *quantum meruit*. *See DeLapaz*, 917 N.E.2d at 98; *Will*, 881 N.E.2d at 505; *Wegner v. Arnold*, 713 N.E.2d 247, 251 (Ill. App. Ct. 1999). Without more, we cannot know if the attorneys' fees award was reasonable.

On remand, the district court may conclude that the full contingency fee is a reasonable award. We do not intend to insinuate that some lesser award is required. Our conclusion is limited to the ruling that the district court erred by failing to consider evidence related to the relevant factors under Illinois law for determining reasonable attorneys' fees under *quantum meruit*.

### III. CONCLUSION

For the foregoing reasons, we VACATE the district court's award of attorneys' fees and REMAND the case for further proceedings consistent with this opinion.