2021 IL App (1st) 191942-U

No. 1-19-1942

Order filed May 19, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| JOEL F. HANDLER, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 19 M1 103303 |
| | ) | |
| TAMARA SMITH, | ) | Honorable |
| | ) | Mary Kathleen McHugh, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Howse and Justice McBride concurred in the judgment.

**ORDER**

¶ 1     *Held*:  We affirm the circuit court's judgment in favor of plaintiff where, based on the record on appeal, we have no basis to disturb the judgment. We also deny plaintiff's motion to dismiss this appeal.

¶ 2     Tamara Smith hired attorney Joel F. Handler to represent her in an employment matter against the Board of Education of Thornton Township High School District 205. After Handler filed a charge of discrimination against District 205 with the Equal Employment Opportunity Commission (EEOC) on Smith's behalf, the parties reached a resolution during a mediation. While

that resolution was being memorialized into a written settlement agreement, Smith disagreed with the portion of the settlement amount that Handler claimed he was entitled to as attorney fees. Before Smith signed the settlement agreement with District 205, she sent Handler an e-mail stating that she was firing him and then, she completed the settlement on her own. Smith subsequently directed District 205 to send Handler an amount of attorney fees that she thought they had agreed upon. Handler disagreed with the amount, believing that he was owed more based upon their engagement agreement, and sued Smith for breach of contract. The case went to trial where the circuit court found in Handler's favor.

¶ 3     Smith now appeals the circuit court's judgment, contending that: (1) the court erred in allowing Handler to sue for breach of contract based upon their engagement agreement rather than under the doctrine of quantum meruit; and (2) Handler's attorney fees were excessive. Initially, we deny a motion to dismiss this appeal filed by Handler that was taken with the case, and for the reasons that follow, we affirm the judgment of the circuit court.

¶ 4                             I. BACKGROUND

¶ 5     In July 2018, Smith signed an engagement agreement for Handler to represent her in the prosecution of an employment-related claim against District 205. As part of the agreement, they agreed that Handler would be paid $500 per hour while the matter was pending before the EEOC. If the matter could not be resolved before the EEOC, they agreed that the agreement would convert to a contingency-fee arrangement following the filing of a complaint in federal court. In such a scenario, Handler would receive 40 percent of any sum obtained by settlement, suit or otherwise, but that Smith would be responsible for whatever attorney fees and costs had been incurred before the conversion. They further agreed that, in the event Handler was awarded statutory attorney fees, Smith would receive a credit against the amount she owed him commensurate with the amount of

statutory attorney fees. Additionally, Smith agreed to pay Handler's reasonable costs in connection with his representation of her.

¶ 6    Following the execution of their agreement, Handler filed a charge of discrimination against District 205 with the EEOC on Smith's behalf. Thereafter, Handler sent Smith his first invoice, which detailed his time spent working on her case in July 2018 and amounted to three hours of work and a total of $1500 in services. Smith paid $1475 of the first invoice. In a second invoice for services rendered in August 2018, Handler billed Smith $1400, which included $1375 in services that month plus the $25 outstanding from the first invoice.

¶ 7    On September 28, 2018, Smith and Handler executed an amended engagement agreement, whereby the hourly-fee arrangement was superseded by a contingency-fee arrangement. Under this new arrangement, Smith agreed to pay Handler 40 percent of any sum obtained by lawsuit, settlement or otherwise. In addition to this amount, however, Smith agreed to pay Handler his outstanding balance of $1400 for legal services rendered under their prior hourly-fee arrangement. The amended engagement agreement also contained a clause that stated, if Smith requested Handler withdraw as her attorney prior to the resolution of her claim by suit, settlement or otherwise, she agreed to pay him $500 per hour, or his then-customary hourly rate, "for the time which he has spent in connection with [her] claim, or forty percent (40%) of the amount being offered by" District 205 "at the time of [the] request to withdraw, whichever is greater."

¶ 8    On November 5, 2018, Handler conducted a mediation with District 205's attorney and an EEOC mediator, which resulted in the parties reaching a resolution. Following the mediation, the EEOC mediator wrote both Handler and District 205's attorney congratulating them for "reaching a resolution" and observing that it was her "understanding *** that the parties will be entering into a separate agreement with language drafted and agreed upon by you." The mediator asked them to

reach out if they needed help completing the "settlement paperwork" and stated that Handler should execute a withdrawal of charge form "in conjunction with the separate agreement." A week later, Smith signed a request to withdraw her charge of discrimination against District 205.

¶ 9    As part of the settlement agreement, which was titled a "Release and Waiver of Claims," District 205 agreed to pay Smith a sum of $15,000 in exchange for, among other things, Smith withdrawing her charge of discrimination and promising not to otherwise sue. On November 15, 2018, Handler sent Smith a settlement statement to review that showed $6000 of that $15,000 (or 40 percent) was assigned to Handler as attorney fees under their contingency-fee agreement, $1400 was assigned to Handler for the past due attorney fees under the hourly-fee agreement and $2.87 went to reimburse Handler for costs. The remaining $7597.13 was assigned to Smith.

¶ 10    In response to being sent the settlement statement, Smith e-mailed Handler and indicated that they agreed to his attorney fees being only $5150 at the mediation. This number was calculated by Smith by taking 40 percent of $15,000 minus $850, an amount she claimed she already paid him. Smith added that Handler "cannot double dip. It was either the 40 [percent] compensation or paid hourly." Smith asserted that she would not sign a settlement where Handler received $7000 and reiterated that he was owed $5150, which "was part of the reason I agreed to the settlement." Handler replied and remarked that Smith's representations were "inaccurate" and ignored their amended engagement agreement. In response to Handler's e-mail, Smith asserted: "You said if there was a settlement you would get forty and if there was no settlement you would be owed a hourly wage for whatever you did." Smith added that she was unemployed and never would have agreed to an arrangement where Handler received that amount. Smith further stated: "You reassured me when I asked you it didn't mean both when I signed it." Finally, Smith remarked that if Handler could not "take what we agreed on [$]5150 your [*sic*] fired."

¶ 11    Subsequently, Handler responded and noted that the amended engagement agreement was "crystal clear" that Smith would reimburse him $1400 for the outstanding balance for legal services rendered under their prior hourly-fee agreement and then he would be entitled to 40 percent of any resolution of her case by suit or settlement. While Smith and Handler were arguing over his attorney fees, Handler was also revising the settlement agreement with District 205's attorney and Smith, so that the settlement could be voted on by District 205 on November 19, 2018. In one e-mail between the attorneys, District 205's attorney indicated that the settlement agreement had "not been vetted" by District 205 yet and it would be once he and Handler had "an understanding." One revision was in a recital, where it originally stated that Smith had filed a charge of discrimination against District 205 in the Illinois Department of Human Rights and Handler requested that recital changed to the EEOC. Handler also requested a modification to the language surrounding Smith's $15,000 settlement payment. In Smith's various responses to Handler, she also raised disagreements about the language of some clauses of the settlement, including that she wanted the right to sue individual employees of District 205. Ultimately, on November 16, 2018, she e-mailed Handler and fired him.

¶ 12    Afterward, Smith e-mailed District 205's attorney and the EEOC mediator informing them that she had fired Handler and to direct all correspondences to her. Additionally, Smith attached a letter that included modifications to her settlement agreement, which included that only $5150 would be payable to Handler for his representation of her. Smith eventually signed a settlement agreement with District 205 that included that division of monies, and a check for $5150 was sent to Handler from the treasurer of District 205.

¶ 13    In December 2018, after receiving the check, Handler e-mailed Smith informing her that $5150 was not the amount she owed him and demanded $2252.87 more, which he alleged was owed to him based on their amended engagement agreement.

¶ 14    In February 2019, Handler sued Smith for the allegedly owed attorney fees. In the complaint, Handler alleged that, two months after he began representing Smith, she informed him that she could not afford his hourly rate and requested that their engagement agreement be converted into a contingency-fee agreement. Following the execution of their amended engagement agreement, the complaint stated that Handler negotiated a settlement during a mediation before the EEOC with District 205 that Smith had approved. However, following the settlement agreement, the complaint alleged that Smith fired Handler, went to District 205's attorney and unilaterally modified the settlement agreement "whereby Handler would receive a lesser amount than what was agreed pursuant to Smith's amended engagement agreement." Handler asserted that he performed all of his responsibilities under their agreement and despite his demands for payment, Smith had refused to pay him. Handler accordingly requested judgment against Smith in the amount of $2252.87 plus costs and prejudgment interest. Handler attached to his complaint their initial engagement agreement, their amended engagement agreement and a billing statement that showed a balance owed by Smith of $1400. In Handler's civil action cover sheet, he indicated that his lawsuit was a breach of contract case.

¶ 15    In April 2019, Smith appeared *pro se* and denied the allegations against her. After the parties' first court appearance, the circuit court set the case for trial. A trial eventually occurred in August 2019, where Smith represented herself. After the trial, the court found in favor of Handler

for a judgment of $2327.97 plus $466.44 in costs.[1] Smith filed a *pro se* notice of appeal, but subsequently obtained private counsel on appeal.

¶ 16                                                    II. ANALYSIS

¶ 17                                      A. Handler's Motion to Dismiss

¶ 18     At the outset, before addressing Smith's contentions on appeal, we must address a motion to dismiss that Handler filed in this court, which we took with the case. In the motion, Handler argues that, because there was no transcript of the trial proceedings in this case and Smith failed to present a bystander's report of the trial, this court cannot properly review the circuit court's judgment. Illinois Supreme Court Rule 323 (eff. July 1, 2017) discusses reports of proceedings from the circuit court. The preferred form of a report of proceeding is a verbatim transcript of the proceeding. See *id.* However, "[i]f no verbatim transcript of the evidence of proceedings is obtainable the appellant may prepare a proposed report of proceedings," *i.e.*, a bystander's report "from the best available sources, including recollection." Illinois Supreme Court Rule 323(c) (eff. July 1, 2017). Rule 323(c) further provides the procedure the appellant must undertake if she chooses to rely on a bystander's report. *Id.*

¶ 19     It is well established that "an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391 (1984). This court may dismiss an appeal for the appellant's failure to file a report of proceedings in accordance with Rule 323. *Rosenblatt v. Michigan Avenue National Bank*, 70 Ill. App. 3d 1039, 1042 (1979). But more commonly, the appellant's failure to provide a report of proceedings has "been regarded as merely depriving a reviewing court of a basis for reaching

---

[1] There is no report of proceedings from the trial. However, the parties did stipulate to including the exhibits that were introduced at trial in the record on appeal.

issues whose merits depend on matters thus omitted, such as issues of sufficiency of evidence [citation] or relating to conduct of a hearing." *Id.* To this end, where the appellant has failed to present a sufficiently complete record of the proceedings, "it will be presumed that the order entered by the trial court was in conformity with law and had a sufficient factual basis." *Foutch*, 99 Ill. 2d at 392. And any doubts that arise from the incompleteness of the record must be resolved against the appellant. *Id.* While we do not believe that Smith's failure to provide a report of proceeding of the trial in compliance with Rule 323 warrants the dismissal of her appeal, we will review her contentions on appeal under the well-established principles of *Foutch*. Consequently, we deny Handler's motion to dismiss and address the merits of Smith's appeal.

¶ 20                                B. Smith's Appeal

¶ 21                          1. Breach of Contract or Quantum Meruit

¶ 22    Smith first contends that the circuit court erred in allowing Handler to proceed on a breach of contract theory after he had been terminated because once she fired him, he was limited to a recovery under a theory of quantum meruit, not a recovery based on their amended engagement agreement.

¶ 23    Under Illinois law, a client may terminate her attorney's services at any time with or without cause. *In re Estate of Callahan*, 144 Ill. 2d 32, 37 (1991). A "client's right to discharge [her] attorney at will is not a breach of contract but a term of the contract implied by law because of the special relationship between attorney and client and that it would be anomalous and unjust to hold a client liable in damages for exercising that implied right." *Rhoades v. Norfolk & Western Ry. Co.*, 78 Ill. 2d 217, 229-30 (1979). Once a client fires her attorney, an engagement agreement that provided for a contingency fee ceases to exist. *In re Estate of Callahan*, 144 Ill. 2d at 40.

¶ 24 For example, in *Rhoades*, an injured railroad worker hired a law firm to represent him in a personal injury lawsuit against his employer, and they agreed to a 25 percent contingency fee. *Id.* at 220-21. The next day, the worker decided not to file the lawsuit, but nevertheless, the law firm filed the lawsuit and sent the employer a notice of an attorney's lien. *Id.* at 221. Later, the law firm dismissed the case at the worker's request, and he settled the claim with his employer on his own. *Id.* at 221-22. Upon learning of the settlement, the law firm filed a petition to adjudicate its lien and obtain attorney fees, which the circuit court awarded in accordance with the law firm's contingency-fee agreement. *Id.* at 222. The case reached our supreme court, where one of the issues was whether a discharged law firm could still collect its full contingency fee. *Id.* at 226. Our supreme court held that the law firm could not collect its full contingency fee but rather was "entitled to be paid on a quantum meruit basis a reasonable fee for services rendered before discharge." *Id.* at 230.

¶ 25 And so, following a discharge, "a lawyer is not entitled to the full amount of fees agreed to between the lawyer and the client in contract. Instead, the lawyer is only entitled to be compensated on a quantum meruit basis for the legal services which the lawyer actually performed on the client's behalf." *In re Smith*, 168 Ill. 2d 269, 293 (1995). The doctrine of quantum meruit allows the circuit court to award an attorney " 'as much as he deserves' " for representing a client. *Lee v. Ingalls Memorial Hospital*, 232 Ill. App. 3d 475, 478 (1992) (quoting *Van C. Argiris & Co. v. FMC Corp.*, 144 Ill. App. 3d 750, 753 (1986)). And as much as the attorney deserves is the reasonable value of his services during the representation of his client. *In re Estate of Callahan*, 144 Ill. 2d at 41. Among the factors the court should consider when awarding attorney fees under quantum meruit are:

" 'the skill and standing of the attorney employed, the nature of the case and the difficulty of the questions at issue, the amount and importance of the subject matter, the degree of responsibility involved in the management of the case, the time and labor required, the usual and customary fee in the community, and the benefit resulting to the client.' " *Id.* at 44 (quoting *Mireles v. Indiana Harbor Belt R.R. Corp.*, 154 Ill. App. 3d 547, 551 (1987)).

¶ 26 As such, the doctrine of quantum meruit applies when an attorney has been discharged by his client prior to the resolution of the case. *In re Smith*, 168 Ill. 2d at 293. On the other hand, once an attorney represents his client through the resolution of a case, the alleged entitlement to attorney fees becomes one of breach of contract based upon the parties' engagement agreement. See *Todd W. Musburger, Ltd. v. Meier*, 394 Ill. App. 3d 781, 793 (2009) ("As the trial court recognized, plaintiff law firm could only pursue an action for quantum meruit (and could not pursue a cause of action for breach of contract) because it was representing defendant on a contingent basis and was discharged in the midst of that representation.").

¶ 27 In the present case, Handler brought a breach of contract lawsuit. And thus, under this theory, there is an implicit assumption that Handler represented Smith through the conclusion of her case because otherwise, quantum meruit would be the appropriate theory of recovery. See *In re Smith*, 168 Ill. 2d at 293. Because we do not have any report of proceedings from the trial, we have no idea what occurred during the trial except for the exhibits that were introduced. Furthermore, when the circuit court found in favor of Handler for $2327.97 plus costs, we have no idea the reasoning behind this judgment.

¶ 28 What we do know is that, in Handler's complaint, he requested a judgment of $2252.87 plus costs and prejudgment interest. And in an exhibit from the trial, Handler provided a

calculation for prejudgment interest using five percent as the interest rate and eight months as the length of time, though using $2252.57, which resulted in $75.10 of prejudgment interest. $75.10 added to $2252.87 equals $2327.97. Thus, the circuit court awarded Handler the amount he requested from his complaint plus the prejudgment interest calculated in his exhibit. And we know that the amount requested in Handler's complaint was the difference between what Handler claimed he was owed under the amended engagement agreement ($1400 from the preexisting balance plus $6000—40 percent of the settlement agreement—plus $2.87 in various costs) and the $5150 that Smith had directed to Handler for his services. Stated otherwise, the circuit court awarded Handler exactly what he was owed under the amended engagement agreement. Thus, based on Handler's complaint, the exhibits he entered into evidence at trial and the circuit court's judgment, it appears as if the court found for him based on breach of contract principles.

¶ 29    But to reiterate, breach of contract is the appropriate theory of recovery if Handler had represented Smith through the completion of her case. Yet it is arguable that this assumption is incorrect given that Smith discharged Handler before District 205 actually vetted and voted on the agreement. While District's 205's vote may have been perfunctory, it is certainly within the realm of possibility that it could have voted against the settlement. Moreover, based on the exhibits from trial, the mediation between the parties resulted in a "resolution," which the mediator noted would have to be memorialized by "a separate agreement with language drafted by and agreed upon you." In other words, it appears from the mediator's statements that the parties contemplated a formal written agreement.

¶ 30    While based on the exhibits from trial, it is unclear if this mediation resolution was oral or in writing, such resolutions may be binding. Oral settlement agreements can be binding if there was an offer, acceptance and a meeting of the minds between the parties as to the terms of the

agreement. *Condon & Cook, L.L.C. v. Mavrakis*, 2016 IL App (1st) 151923, ¶ 56. Moreover, "if the parties agree that a formal document will be prepared only as a memorialization of the oral agreement, the bargain is binding even though the document has not been executed." *Ceres Illinois, Inc. v. Illinois Scrap Processing, Inc.*, 114 Ill. 2d 133, 143 (1986). Similarly, "[t]he fact that parties contemplate that a formal agreement will eventually be executed does not necessarily render prior agreements mere negotiations, where it is clear that the ultimate contract will be substantially based upon the same terms as the previous document." *Chicago Investment Corp. v. Dolins*, 107 Ill. 2d 120, 127 (1985). But, on the other hand, even if the critical terms of a contract have been agreed to, " 'if the clear intent of the parties is that neither will be legally bound until the execution and delivery of a formal agreement, then no contract comes into existence until such execution and delivery.' " *Ceres*, 114 Ill. 2d at 143-44 (quoting *Chicago Title & Trust Co. v. Ceco Corp.*, 92 Ill. App. 3d 58, 69 (1980)). In other words, "[i]f the parties construe the execution of a formal agreement as a condition precedent, then no contract arises unless and until that formal agreement is executed." *Dolins*, 107 Ill. 2d at 127.

¶ 31    Turning back to Smith's contention on appeal, in which she contends that Handler could only recover under quantum meruit principles, this argument inherently presumes that she fired Handler prior to the completion of her case, as this is the only way quantum meruit would be Handler's appropriate theory of recovery. Given that District 205 had yet to vote on the settlement when Smith discharged Handler and the question of whether the mediation resolution itself was binding, it is questionable, if not doubtful, that Handler did indeed represent Smith through the completion of her case. But critically fatal to Smith's contention on appeal is that she never raised these arguments before the circuit court, as it appears from the limited record that Smith acquiesced that this was a breach of contract case from the time she filed her answer until she filed her notice

of appeal. Breach of contract and quantum meruit are two distinct causes of action, and in the present case, the proper procedure for Smith would have been to file a motion to dismiss based on breach of contract being an inappropriate theory of recovery. See *Meier*, 394 Ill. App. 3d at 785-86, 93. She cannot for the first time on appeal essentially attempt to have Handler's breach of contract cause of action dismissed for being an inappropriate theory of recovery.

¶ 32     "It is well settled that issues not raised in the trial court are deemed [forfeited] and may not be raised for the first time on appeal." *Haudrich v. Howmedica, Inc.*, 169 Ill. 2d 525, 536 (1996). A defendant cannot "change [her] theory on appeal" because it "would 'not only weaken the adversarial process and our system of appellate jurisdiction' [citation], but would likely prejudice the plaintiff, since he may have been able to present evidence to discredit the theory had it been raised in the evidence presentation stage, that is to say, in the trial court." *Id.* (quoting *Daniels v. Anderson*, 162 Ill. 2d 47, 59 (1994)). Simply, there is no evidence that Smith ever raised an argument in the circuit court that Handler was only entitled to attorney fees under the quantum meruit doctrine, a doctrine that is heavily fact-intensive, involves weighing several factors and ultimately relies on the broad discretion of the circuit court. See *In re Estate of Callahan*, 144 Ill. 2d at 43-44. Because Smith failed to raise the doctrine of quantum meruit in the circuit court, she cannot raise the doctrine for the first time on appeal. See *In re Trusts of Strange ex rel. Whitney*, 324 Ill. App. 3d 37, 44 (2001) (not addressing an argument based on quantum meruit where "[n]othing in the record indicates that [the appellants] raised the issue of quantum meruit in the trial court"). Although we acknowledge that Smith represented herself below, there are no special rules regarding forfeiture for *pro se* litigants. *Shakari v. Illinois Department of Financial and Professional Regulation*, 2018 IL App (1st) 170285, ¶ 34.

¶ 33    Still, Smith highlights *Hux v. Raben*, 38 Ill. 2d 223, 225 (1967) and argues that, under Illinois Supreme Court Rule 366 (Feb. 1, 1994), this court has the discretion to overlook her forfeiture because application of the doctrine would be unjust. However, in *Hux*, when our supreme court discussed various supreme court rules and the forfeiture doctrine, it also remarked: "There are limitations. '(A)n appellate court should not, and will not, consider different theories or new questions, if proof might have been offered to refute or overcome them had they been presented at the trial.' " *Hux*, 38 Ill. 2d at 225 (quoting *Rentways, Inc. v. O'Neill Milk and Cream Co.*, 308 N.Y. 342 (1955)). The limitation discussed in *Hex* is exactly the situation in this case where we are being asked to consider a new theory of defense without that theory being presented to the circuit court for first review. We therefore cannot excuse Smith's failure to raise the issue of quantum of meruit in the circuit court and consequently, we have no basis to disturb the circuit court's finding in favor of Handler for $2327.97.

¶ 34    With that being said, assuming *arguendo* that quantum meruit would have been the proper theory of recovery for Handler based on the facts of this case, the result of this case likely would not have changed. While the amended engagement agreement would have ceased to exist if Smith terminated Handler prior to the case's resolution (see *In re Estate of Callahan*, 144 Ill. 2d at 40), even under the doctrine of quantum meruit, the reasonable value of an attorney's services may be the full contract fee. In *Rhoades*, 78 Ill. 2d at 230, although our supreme court found the attorney was not entitled to the full contract fee, it observed that a discharged attorney could recover his full contract fee "in cases in which an attorney who has done much work is fired immediately before a settlement is reached" because "the factors involved in determining a reasonable fee would justify a finding that the entire contract fee is the reasonable value of services rendered."

¶ 35    To this end, in *Wegner v. Arnold*, 305 Ill. App. 3d 689, 691 (1999), a decedent's wife hired an attorney to represent her in filing a wrongful death and survival action against the driver of the vehicle that killed her husband for a 33 percent contingency fee. The litigation proceeded, and the attorney performed more than 50 hours on the case over an 18-month period. *Id.* at 695. However, the wife fired the attorney, and hired new attorneys in his stead. *Id.* at 691. Two days before she fired her attorney, the defendant's attorney had recommended to the defendant's insurer that it offer $100,000 to settle the case. *Id.* at 691-92. Two and a half months after the wife fired her initial attorney, the defendant's attorney made a formal offer of $100,000 to the successor attorneys to settle the case, and the case settled. *Id.* at 692. In connection with the litigation over the attorney fees, the defendant's attorney filed an affidavit averring that his offer to settle was based on "the pleadings, investigation, discovery, and depositions" that occurred while the initial attorney represented the wife. *Id.* The initial attorney filed a petition for attorney fees based on his contingency-fee agreement, but the circuit court only allowed him to collect $7000 based on an hourly rate. *Id.* at 693.

¶ 36    On appeal, this court analyzed the case under quantum meruit principles and found that the initial attorney was entitled to nearly his full contract fee because his work of filing pleadings, investigating the case and performing discovery was what led to the settlement offer that the client ultimately accepted. *Id.* at 695. We reasoned that the initial attorney's "efforts obtained the maximum gross benefit available to the client" and it would be patently unfair to deprive him of his nearly full contract fee where "the result obtained was entirely due to his efforts." *Id.* Relying on the language of *Rhoades*, we observed that "the present case presents the precise type of situation contemplated" where "the reasonable value of services rendered would be the entire contract fee." *Id.* at 694. In reaching this result, this court remanded the case to the circuit court to

award the initial attorney his full contract fee minus an amount that the successor attorneys deserved under quantum meruit principles for their limited work at the end of the case. *Id.* at 697.

¶ 37    Given the precedent of *Rhoades* and *Wegner*, if the circuit court viewed this case under quantum meruit principles, it would have likely found that Handler was entitled to his full contract fee anyway because Smith discharged him just prior to signing the settlement agreement and the agreement itself was reached entirely due to his efforts.

¶ 38                                  2. Excessive and Unreasonable Attorney Fees

¶ 39    Additionally, Smith contends that, when combining the $5150 payment from Smith, the judgment from this case and Smith's payment to Handler from his first invoice, Handler's overall fees in this case were excessive and unreasonable under Rule 1.5(a) of the Illinois Rules of Professional Conduct (eff. Jan. 1, 2010).

¶ 40    Under Rule 1.5(a), "[a] lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." *Id.* Rule 1.5(a) then lists various factors to be considered in determining whether a fee is reasonable. *Id.* However, Smith never raised the issue of Handler's fees being excessive in the circuit court. As just discussed, even though Smith represented herself below, "[i]t is well settled that issues not raised in the trial court are forfeited and may not be raised for the first time on appeal." *Bank of New York Mellon v. Rogers*, 2016 IL App (2d) 150712, ¶ 72. Furthermore, Smith posits that Illinois courts have the power to regulate the collection of attorney fees and highlights *In re Gerard*, 132 Ill. 2d 507 (1989) and *In re Holz*, 125 Ill. 2d 546 (1988). However, those cases are from our supreme court and relate to attorney fee issues in cases originating from the Administrator of the Attorney Registration and Disciplinary Commission filing complaints against attorneys. None of those cases involved appellate courts

reviewing the reasonableness of attorney fees for the first time on appeal. *In re Gerard* and *In re Holz* are therefore inapposite and consequently, Smith has forfeited this contention on appeal.

¶ 41                                    III. CONCLUSION

¶ 42     For the foregoing reasons, we affirm the judgment of the circuit court of Cook County and deny Handler's motion to dismiss.

¶ 43     Affirmed; motion to dismiss denied.